UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPCS, a brand of T-MOBILE USA, Inc., a Delaware Corporation<br><br>                Plaintiff,<br><br>      v.<br><br>MARK DEVOR, a/k/a MARCUS W. DEVOR; and SHELDON CHASE a/k/a CHASE SHELDON a/k/a BLU CHASE<br><br>                Defendant. | Case No. 1:16-cv-02949<br><br>Hon. Milton I. Shadur |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR EXTENSION OF TIME TO EFFECT SERVICE AND FOR SPECIAL ORDER GRANTING PROPOSED ALTERNATIVE METHOD(S) OF SERVICE UPON DEFENDANT SHELDON CHASE a/k/a CHASE SHELDON a/k/a BLU CHASE**

Plaintiff T-Mobile USA, Inc., for itself and its MetroPCS brand (collectively referred to hereinafter as "MetroPCS"), by and through undersigned counsel, hereby submits its memorandum of law in support of its motion for extension of time to effect service and for special order granting proposed alternative method(s) of service upon Defendant Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase.

## I. INTRODUCTION

MetroPCS filed its Complaint for Damages and Injunctive Relief against Defendant Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase ("Defendant" or "Chase") on March 8, 2016. [DE 1]. This Court issued a Summons for Chase on March 9, 2016. [March 9, 2016 Docket text entry only]. Pursuant to Federal Rule of Civil Procedure 4(m) (2015), service of the

1

107258194.3

summons and complaint on Chase must be made within ninety (90) days from when the complaint is filed, thus, the deadline to serve Chase is June 6, 2016.

MetroPCS hired Stumar Investigations ("Stumar" or "the investigators"), an investigation services company, to conduct an investigation on Chase, which included uncovering his name, aliases, date of birth, social security number and a reported residential address. Aff. of Hal Leshner ¶ 3 (hereinafter Leshner Aff. ¶ __), attached hereto as Exhibit A. Investigators conducted background checks of Defendant using proprietary investigative databases including TransUnion/TLOxp, a recognized leader in location software used by, *inter alia*, tens of thousands of law enforcement agencies, as well as global corporations, and major financial institutions, to research and locate people and companies, and to conduct due diligence, risk assessment, fraud detection, and identity authentication.[1] *Id.* ¶ 3.

On March 10, 2016, a process server visited Defendant's reported residential address in Valley City, North Dakota. *Id.* ¶ 4. The process server was greeted by a female who identified herself as a resident of the property and stated that Defendant Chase did not reside at the location and that she was unfamiliar with Chase. *Id.*, Ex. 1.

Based on subsequent investigative searches, it appeared that Chase may have been living with co-Defendant Mark Devor ("Devor") at 3836 Stockbridge Avenue, Los Angeles, CA 90032. *Id.* ¶ 5. As such, Plaintiff intended to serve Chase at the Los Angeles address. However, a process server who attempted service upon Devor at that same address was greeted by a man (Andy Ortiz) who stated that he had just moved into the residence about a week prior to the service attempt and did not know Devor. Leshner Aff. ¶ 5, Ex. 2. Because Chase was believed to be living with Devor but Devor was no longer residing at the Stockbridge Avenue address in Los Angeles, which was now occupied by a new resident, attempts to serve Chase at that address were abandoned as futile. *Id.*

---

[1] ABOUT TRANSUNION/TLOXP, https://www.tlo.com/about-tloxp (last visited May 16, 2016).

Further database searches revealed an active warrant for Chase's arrest by the Burleigh County North Dakota Sheriff's Office, file number 08-2015-CR-00912. *Id.* ¶ 6. However, further inquiry revealed the Bismarck, North Dakota address for Chase listed on the arrest warrant does not exist. *Id.*

Through a proprietary database search, the investigators also identified an email address, gud_game@msn.com, associated with Chase as well as an online social media Facebook account for Chase at http://www.facebook.com/blu.chase. *Id.* ¶ 7. The investigators confirmed that the email address associated with Chase is the same email address linked to the Facebook account http://www.facebook.com/blu.chase. *Id*. Chase is friends with co-defendant Devor on Facebook. *Id.* ¶ 9. Chase and Devor posted the same pictures simultaneously on their individual Facebook accounts when they were together. *Id.*, Composite Ex. 4. The Facebook account appears to be active—the profile picture was updated and Defendant posted several messages detailing his unlawful phone trafficking activities in February 2016. *Id.* ¶ 8. On the Facebook profile, Defendant identifies his employer as Nez Perce Tribe, Lapwai, ID. *Id.* ¶ 10. However, Stumar contacted the tribe, who stated that Defendant is not an employee nor a member of the tribe. Leshner Aff. ¶ 10. Further searches of Chase's Facebook profile revealed two (2) family members with whom Chase associates: Lissa Yellowbird Chase ("Lissa") and Jonathan Dick ("Jonathan"). *Id.* ¶ 11. The investigators attempted to make contact with Lissa and Jonathan by telephone, without success. *Id.* Despite extensive efforts and exhausting all of their investigative resources, Stumar has been unable to locate Chase to effectuate service. *Id.* ¶ 12.

## II. THE STANDARD

Pursuant to Federal Rule of Civil Procedure 4(e), service of process may be effected in any federal district court by following the state law where the federal district court is located. *Id.*; *see*

107258194.3

*also Nesbitt* v. *Regas*, No. 13 C 8245, 2015 WL 1331291, at *4 (N.D. Ill. Mar. 20, 2015) (citing Fed. R. Civ. P. 4(e)(1)). Under Illinois law, service of process upon an individual is generally obtained by either: (1) personal service; or (2) abode service, (*i.e.*, leaving a copy of the summons and complaint with a person of thirteen (13) years or older who resides at the defendant's usual place of abode and informing the recipient of the contents therein and also mailing a copy of the summons and complaint in a sealed envelope to the defendant's home address to fully comply with the requirements of the statute). 735 ILL. COMP. STAT. 5/2–203.3(a).

If service by either prescribed method proves impractical, then a party may move the court, without notice, to enter a special order approving a comparable method of service. *Id.* 5/2–203.1. The alternative method must be consistent with the rights of due process. *Id.* "When usual methods of service prove impracticable, service that is 'reasonably calculated, under all circumstances, to apprise the interested party of the pendency of the action' will suffice." *D.R.I., Inc. v. Dennis*, No. 03 Civ. 10026(PKL), 2004 WL 1237511, at *1 (S.D.N.Y. Jun. 3, 2004) (quoting *Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Hotel Employees and Restaurant Employees Int'l Union Welfare Fund v. Printer's Row, LLC*, No. 06 C 4630, 2008 WL 5142187, at *3 (N.D. Ill. Dec. 5, 2008) ("[T]he 'comparable method of service' under Section 2–203.1 [must] be 'reasonably calculated to inform a party of the pendency of the action and provide that party with an opportunity to respond.'") (quoting *Swaim v. Moltan Co.*, 73 F.3d 711, 720 (7th Cir. 1996)). The movant must show by affidavit that "'a diligent inquiry as to the location of the individual defendant was made; and (2) reasonable efforts to make service have been unsuccessful.'" *Nesbitt*, 2015 WL 1331291, at *4 (quoting 735 ILL. COMP. STAT. 5/2–203.1). Additionally, under recent amendments to the Federal Rules

of Civil Procedure, service must be effectuated within 90 days after the complaint is filed. *See* FED. R. CIV. P. 4(m).

### III. LEGAL ARGUMENT

A. *MetroPCS Made A Diligent Inquiry As to the Location of Defendant*

MetroPCS has made a diligent attempt to locate the Defendant. In *Nesbitt*, plaintiff performed a "diligent inquiry as to the location of the defendant," by relying upon defendant's self-identified residence of record as reflected in the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). *Nesbitt*, 2015 WL 1331291, at *4. Additional inquiry was made when the plaintiff in *Nesbitt* confirmed with the doorman at the defendant's residence that defendant indeed lived there. *Id.* The *Nesbitt*, this Court further held that the plaintiff exhausted all possibilities of inquiry by attempting service at defendant's parents' home and defendant's former employer. *Id.* In *Printer's Row, LLC*, the court found that plaintiffs made a diligent inquiry as to the defendant's location because plaintiffs: (1) located the address of one of defendant's business interests; (2) located defendant's current attorney; (3) located two additional addresses where defendant may be; and (4) retained an investigation service who obtained defendant's registered address. *Printer's Row, LLC*, 2008 WL 5142187, at *1. This Court found in *Printer's Row* that plaintiffs' efforts constituted 'diligent inquiry' under the Illinois service of process statute. *See id.* at *3.

As in *Printer's Row,* MetroPCS retained the services of an investigation agency. *Id.* at *1; Leshner Aff. ¶ 3. Stumar conducted a preliminary search using proprietary databases that are widely known and respected by, *inter alia*, law enforcement, to discover Chase's name, aliases, date of birth, social security number, and his reported residential address. Leshner Aff. ¶ 3. After discovering Chase no longer resides at the reported residential address, the investigators

5

conducted additional in-depth background searches in an attempt to find a current address for Chase, including locating an address on an arrest warrant in Burleigh County, North Dakota, which proved to be nonexistent. *Id.* ¶¶ 5–6. Similar to the plaintiffs in *Printer's Row*, who located two additional addresses for the evasive defendant, attempts were made by MetroPCS to uncover additional addresses affiliated with Chase, which resulted in two additional addresses. *Printer's Row, LLC*, 2008 WL 5142187, at *1 (sending waivers of service to defendant to two addresses located in Chicago); *see also* Leshner Aff. ¶¶ 5–6. Like *Nesbitt*, where the plaintiff attempted service upon defendant's previous employer, MetroPCS made attempts to locate Chase through his self-identified employer on Facebook. *Nesbitt*, 2015 WL 1331291, at *3; Leshner Aff. ¶ 10. However, when contacted the purported employer stated that Chase did not work there and did not belong to the organization. Leshner Aff. ¶ 10. Despite a diligent inquiry made by MetroPCS, with the assistance of hired investigator process servers and private investigators at significant expense, MetroPCS has not been able to locate Chase to serve him by traditional methods of service. MetroPCS has satisfied the diligent inquiry requirement under 735 ILL. COMP. STAT. 5/2-203.1.

B.  ***MetroPCS Made Reasonable Efforts to Effect Service Upon Defendant***

MetroPCS has made reasonable efforts to effect service upon Chase before the deadline of June 6, 2016. In *Nesbitt*, this Court found that the plaintiff had made reasonable efforts to serve defendant when the plaintiff attempted service several times at the residential address listed by Defendant in a public registry. *Nesbitt*, 2015 WL 1331291, at *5. After each failed attempt, the process server left a business card with the building doorman to give to defendant. *Id.* Additional service attempts were made at defendant's parents' home and a former employer. *Id.* Taken in totality, the court found that plaintiff had made reasonable efforts to effectuate service.

*Id.* ("[T]he Court determined that further efforts to attempt personal service or abode service on [defendant] would be futile and therefore impractical.").

In *Printer's Row,* this Court found that reasonable efforts at service had been made where plaintiffs: (1) attempted service at the location of one of defendant's business interests; (2) attempted to obtain a waiver of service from defendant's attorney; (3) mailed waivers of service to defendant at two additional addresses where it was believed he may be located; and (4) attempted service at the address listed on defendant's driver's license. *Printer's Row, LLC*, 2008 WL 5142187, at *1. The court held the case appropriate for an order authorizing alternative service. *Id.* at *3.

As in *Nesbitt* and *Printer's Row,* MetroPCS attempted service at Defendant's reported residential address. *Nesbitt*, 2015 WL 1331291, at *4; *Printer's Row, LLC*, 2008 WL 5142187, at *1; Leshner Aff. ¶ 4. After attempting service at the reported residential address, MetroPCS discovered Chase no longer lived there, and may not have lived at his reported residential address for years. Leshner Aff. ¶ 4, Ex. 1. Similar to the plaintiffs in *Printer's Row,* who made additional attempts of service by mailing waiver requests to two additional addresses, MetroPCS made additional attempts to locate Chase at addresses Chase was associated with in Los Angeles, California and North Dakota. *Printer's Row, LLC*, 2008 WL 5142187, at *3; Leshner Aff. ¶¶ 5–6. However, both addresses proved to be futile. Leshner Aff. ¶¶ 5–6. Similar to *Nesbitt*, where the plaintiff attempted service upon defendant's former employer, MetroPCS also made reasonable efforts to serve Chase at the organization he identified as his employer on Facebook. *Nesbitt*, 2015 WL 1331291, at *4; Leshner Aff. ¶ 10. However, after communicating with the listed employer, it was determined that Chase does not work there. Leshner Aff. ¶ 10. Finally, as in *Nesbitt*, where plaintiff attempted service at defendant's parents' home, MetroPCS reached out to two (2) of Chase's family members. *Nesbitt*, 2015 WL 1331291, at *3; Leshner Aff. ¶ 11.

Stumar investigators made several calls to Lissa, but never reached her or anyone at her number. Leshner Aff. ¶ 11. The investigator also called Jonathan, but the call was not returned. *Id.* At significant expense and over several months and in several states, MetroPCS has made diligent efforts and exhausted all reasonable efforts to obtain service upon Defendant Chase and, as such, has met the requirements under 735 ILL. COMP. STAT. 5/2-203.1 to approve alternative service methods. *See id.* ¶ 12. Under the circumstances, MetroPCS seeks the court's approval for alternative methods of service and an extension of the June 6, 2016 deadline to effectuate service.

C. ***Service is Impractical Under the Traditional Methods of Service***

When service becomes impractical under traditional methods of service, the court may enter an order directing a plaintiff to attempt service through an alternative, but comparable means. *Printer's Row, LLC*, 2008 WL 5142187, at *2. "Courts have found a showing of impracticability, and have authorized alternative service, where the defendant could not be located by means of a diligent search." *Ferrarese v. Shaw*, 15 CV 3738 (ARR) (CLP), 2016 WL 889606, at *3 (E.D.N.Y. Jan. 20, 2016) (quoting *S.E.C. v. Nnebe*, No. 01 CV 5247, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003)); *see also S.E.C. v. HGI, Inc.*, No. 99 CV 3866, 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (finding evidence of impracticability where defendant's whereabouts remained unknown, despite efforts to locate defendant by searching computer databases and inquiring with the United States Postal Service). As set forth *supra* III.B.–C. and in the Leshner Affidavit at Exhibit A, MetroPCS has made a diligent inquiry and reasonable efforts to effectuate service upon Defendant Chase without success. Chase has effectively evaded detection and service by MetroPCS's investigators and process servers for several months, and from the information contained on his Facebook account, he is an elusive

and nomadic person. Leshner Aff. ¶ 8, Composite Ex. 3. As such, any further attempts of personal or abode service would prove futile. Therefore, MetroPCS requests the Court enter an order granting an extension of time to effectuate service and approve alternative method(s) of service consistent with due process.

D. *Proposed Alternative Methods of Service*

In a recent opinion, the Eastern District Court of New York granted a petitioner's request to enter an order that permitted substitute service by emailing defendant at his last known email address and serving papers to defendant's Facebook account. *Ferrarese v. Shaw*, 15 CV 3738 (ARR) (CLP), 2016 WL 889606, at *5 (E.D.N.Y. Jan. 20, 2016). In addition to these methods of service, the court also required that plaintiff send copies of the summons and petition by certified mail, return receipt requested to defendant's last known address and to defendant's sister at the same address. *Id.* Similarly, in *F.T.C. v. PCCare247, Inc.*, the court granted approval of alternative service exclusively by means of email and Facebook.[2] No. 12 Civ. 7189(PAE), 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013). MetroPCS requests the Court enter a similar order permitting Plaintiff to serve Defendant Chase by: (1) emailing Chase at his last known email address; (2) providing a copy of the summons and complaint to Chase's Facebook account; and (3) mailing copies of the summons and complaint by certified mail, return receipt requested and regular mail to Chase's last known address and to the address of one (1) or both of his identified family members, Lissa Yellowbird or Jonathan Dick.

"[A]s technology advances and modes of communication progress, courts must be open to considering requests to authorize service via technological means of then-recent vintage,

---

[2] The Court explained the process of service: "The [plaintiff] would send a Facebook message, which is not unlike an email, to the Facebook account of each individual defendant, attaching the relevant documents. Defendant[] would be able to view these messages when [he] next log[s] on to [his] Facebook account[] (and, depending on [his] settings, might even receive email alerts upon receipt of such messages)." *PCCare247, Inc.*, 2013 WL 841037, at *5.

9

107258194.3

rather than dismissing them out of hand as novel." *PCCare247, Inc.*, 2013 WL 841037, at *5; *see also*, *New England Merch. Nat'l Bank v. Iran Power Generation and Transmission Co.*, 495 F.Supp.2d 73, 81 (S.D.N.Y. 1980) ("authorizing service by Telex, and noting that courts 'cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper or steam ships.'"); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) ("authorizing service by email, while 'acknowledging that we tread upon untrodden ground'"). "'Service by email alone comports with due process where a plaintiff can demonstrate that the email is likely to reach the defendant.'" *Ferrarese*, 2016 WL 889606, at *4 (quoting *PCCare247, Inc.*, 2013 WL 841037, at *4) ("collecting cases and finding that service by email alone was sufficient because the defendants had used their email addresses during the course of business and the Court had independently confirmed that one of the email addresses was recently used by one of defendants); *D.R.I., Inc. v. Dennis*, No. 03 CV 10026, 2004 WL 1237511, at *2 (S.D.N.Y. Jun. 3, 2004) ("allowing plaintiff to serve the summons and complaint on defendant by emailing a copy to an email address that plaintiff believes was used by defendant, by sending a copy by certified mail, return receipt requested to defendant's last known address, and by publishing the action in a local newspaper"). While service by Facebook alone has not yet been held to be sufficient to constitute service of process, service by Facebook accompanied with service by email has been held to satisfy the requirements of due process. *Ferrarese*, 2016 WL 889606, at *4; *see also PCCare247, Inc.*, 2013 WL 841037, at *5 and 6 (citing cases and holding that service by *both* email and Facebook satisfies the due process inquiry (emphasis in original)).

In *Ferrarese*, after plaintiff made a diligent inquiry and reasonable efforts to effectuate service upon defendant, without success, plaintiff requested the court enter an order approving

10

service by alternative means. *Ferrarese*, 2016 WL 889606, at *1–*2. The plaintiff's counsel discovered a Facebook account with a profile picture of defendant. *Id.* at *2. However, an email address did not appear to be linked to the account, which made service by Facebook alone questionable. *See id.* The court granted the plaintiff's request to approve alternative service upon the defendant by means of email and Facebook. *Id.* at *5. However, because the plaintiff failed to provide evidence that the defendant uses the email address or maintains the Facebook profile, the court ordered additional methods of alternative service be completed, *i.e.*, sending copies of the summons and complaint by certified mail to the last known addresses of the defendant and defendant's sister. *See id*.

In *PCCare247, Inc.*, the court approved alternative service by email and Facebook. 2013 WL 841037, at *6. Notably, the court in that case found that the Federal Trade Commission "set forth facts that supply ample reason for confidence that the Facebook accounts identified [were] actually operated by defendants." *Id.* at *5. Just as has occurred here, the court in *PCCare247* found persuasive that: 1) defendants' known email addresses matched the email addresses registered with their accompanying Facebook accounts, and 2) defendants were friends on Facebook with their co-defendants. *See id*. The *PCCare247* court concluded that "[w]here defendants run an online business, communicate with customers via email, and advertise their business on their Facebook pages, service by email and Facebook together presents a means highly likely to reach defendants." *Id.* at *6. Similarly, as set forth in the Complaint, Defendants here conduct an online business trafficking in new MetroPCS handsets. Defendant's online activities are further evidenced by the photographs he posted on his Facebook page of hundreds of iPhones for sale or within his possession. Leshner Aff. ¶ 8, Composite Ex. C.

11

As stated *supra* II.B.–C. and in the supporting affidavit of Hal Leshner, MetroPCS has made a diligent and expensive inquiry and reasonable efforts to effectuate service upon Chase. The legally recognized requirements to effectuate alternative service upon Defendant by email, Facebook, and by sending copies of the summons and complaint via certified mail, return receipted requested and regular mail to Defendant's last known address and to one of Defendant's relatives are established. Similar to what occurred in *Ferrarese*, here, investigators for MetroPCS identified Defendant Chase's Facebook profile. *Ferrarese*, 2016 WL 889606, at *2; Leshner Aff. ¶ 7. Further, Stumar confirmed that Chase uses the Facebook account. *Compare* Leshner Aff. ¶ 8 (noting Chase recently updated his profile picture with a picture of himself and advertised his unlawful phone trafficking activities),[3] *with Ferrarese*, 2016 WL 889606, at *2 (affirming by affidavit that "[i]t appears that the Facebook page has been updated frequently throughout the past year"), *and PCCare247, Inc.*, 2013 WL 841037, at *6 (commenting that defendants advertise their businesses on their Facebook pages). Similar to *PCCare247, Inc.*, where the evidence showed defendants' known email addresses were linked to their Facebook profiles; in this case, the investigators confirmed that Defendant Chase's email address, gud_game@msn.com, is directly linked to the Facebook profile associated with Chase. *PCCare247, Inc.*, 2013 WL 841037, at *5; Leshner Aff. ¶ 7; *see also Ferrarese*, 2016 WL 889606, at *2 (granting alternative service by email and Facebook, but also requiring copies of the summons and petition to be sent certified mail, return receipt requested to defendant's last known address and to defendant's sister at the same address because plaintiff failed to show evidence that linked the defendant's known email address to defendant's Facebook account).

---

[3] Facebook allows registered members to adjust their privacy settings on their individual accounts. For example, at the strictest privacy setting, the public can only see an individual's Facebook profile, cover photos, and a link to contact the individual. Depending upon settings, a registered user who is also a friend on Facebook, will have access to more activity on an updated basis on the friend's Facebook page than a member of the public, like an investigator.

Like in *PCCare247, Inc.*, where the Federal Trade Commission verified defendants' Facebook accounts by *inter alia* noting their co-defendants were friends on Facebook, Chase's Facebook profile identifies co-defendant Devor as one of Chase's friends. *PCCare247, Inc.*, 2013 WL 841037, at *3; Leshner Aff. ¶ 9. Devor is also friends with Chase's family member, Lissa. *Id.* ¶ 11. Finally, virtually identical photographs of their surroundings were posted on the same day on both Chase and Devor's individual Facebook accounts, reflecting that Defendants were together when the pictures were taken. *Id.* ¶ 9.

In sum, as detailed *supra*, MetroPCS has exhausted traditional methods of service and has provided the evidence and support necessary to meet the due process requirements to alternatively serve Chase by email and Facebook—held to be a comparable and valid method of service by other federal district courts—and by sending copies of the summons and complaint through certified mail, return receipt requested and regular mail to Defendant's last known address and to one of Defendant's identified relatives.

### IV. CONCLUSION

WHEREFORE, Plaintiff T-Mobile USA, Inc., for itself and its MetroPCS brand (collectively "MetroPCS") respectfully requests the Court enter a special order extending the deadline to effect service of process beyond the June 6, 2016 deadline and granting the proposed alternative methods of service delineated herein—by email, Facebook, and certified mail, return receipt requested and regular mail to Defendant's last known address and to Defendant's relative—to effectuate service upon Defendant Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase, and grant any such other or further relief as this Court deems just and proper.

Dated this <u>25th</u> day of May, 2016.

By: /s/ *Alana Zorrilla-Gaston*
Lawrence H. Heftman

13

Email: lheftman@schiffhardin.com
Charles H.R. Peters
Email: cpeters@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
(312) 258-5600 (fax)

James B. Baldinger (*Admitted pro hac vice*)
Florida Bar No. 869899
Email: jbaldinger@carltonfields.com
Stacey K. Sutton (*Admitted pro hac vice*)
Florida Bar No. 0289530
Email: ssutton@carltonfields.com
Alana Zorrilla-Gaston (Admitted pro hac vice)
Florida Bar No. 27256
Email: agaston@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
(561) 659-7070
(561) 659-7368 (fax)

*Attorneys for Plaintiff*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>25th</u> day of May, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send notification to the registered attorney(s) of record that the documents have been filed and are available for view and downloading.

I HEREBY CERTIFY that also on this <u>25th</u> day of May, 2016, a true and correct copy of the foregoing was served by U.S. Mail postage prepaid on the last known addresses of Defendants:

Mark Devor
3836 Stockbridge Ave.
Los Angeles, CA 90032
*Pro Se Defendant*

Sheldon Chase
560 5th St. NW
Valley City, ND 58072
*Pro Se Defendant*

By: *Alana Zorrilla-Gaston*
Alana Zorrilla-Gaston